UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------
MARIA SOTOLONGO,

       Plaintiff,

  -against-

THE NEW YORK STATE DEPARTMENT OF
MOTOR VEHICLES, MICHELLE MENZIONE,
and BUSHRA VAHDAT (individually and in
their official capacities),

       Defendants.
---------------------------------------------------------------

**MEMORANDUM & ORDER**

19-CV-3282 (NGG) (VMS)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Maria Sotolongo brings this action against Defendants New York State Department of Motor Vehicles ("DMV"), Michelle Menzione, and Bushra Vahdat individually and in their official capacities. (Am. Compl. (Dkt. 14).) Sotolongo, an administrative law judge who works at the DMV, alleges that her supervisors, Vahdat and Menzione, retaliated against her after she complained of gender discrimination. (*See id.* ¶¶ 5-16.) Sotolongo alleges violations of Title VII of the Civil Rights Act of 1964 against the DMV and violations of 42 U.S.C. § 1983 and the New York State Constitution against all Defendants. (*See id.* ¶ 16.) Before the court is Defendants' motion to dismiss Sotolongo's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). (Defs.' Mot. to Dismiss ("Mot.") (Dkt. 20).) For the reasons stated below, Defendants' motion is GRANTED.

1

I.  BACKGROUND

A.  Facts

The court takes the following statement of facts largely from Plaintiff's complaint, the well-pleaded allegations of which the court accepts as true for purpose of Defendants' motion to dismiss. *See N.Y. Pet Welfare Ass'n v. City of New York*, 850 F.3d 79, 86 (2d Cir. 2017).[1]

Sotolongo was hired by the DMV as an ALJ on September 22, 2005. (Am. Compl. ¶¶ 10-12.) At all relevant times, Menzione and Vahdat were her supervisors . (*Id*. ¶¶ 6-11.) Sotolongo alleges that she and her only female colleague were treated differently from similarly situated male ALJs in that "they were not afforded fringe benefits that [their] male coworkers received, and [were] assigned more difficult, labor-intensive cases than [their] male colleagues." (*Id*. ¶ 14.) Sotolongo alleges that she complained about this disparate treatment but nothing was done to remedy it. (*Id*. ¶ 15.) As a result, Sotolongo filed a complaint with the New York State Division of Human Rights ("NYSDHR"), alleging gender discrimination and retaliation. (*Id*. ¶¶ 15-16.) The NYSDHR determined that there was no probable cause to believe that Defendants had engaged in discriminatory conduct, and that finding was sustained when Plaintiff appealed to the New York State Supreme Court. (*See Maria Sotolongo v. The New York State Division of Human Rights*, Ind. No. 36/18 (Nassau Cty. Sup. Ct. Apr. 26, 2018) (Dkt. 20-5) at ECF 2-7.)

Sotolongo now alleges that she has been subject to further discrimination and retaliation by Defendants, as well as by fellow

---

[1] When quoting cases, unless otherwise noted, all citations and quotation marks are omitted and all alterations adopted.

2

ALJ Whalen. (*Id.* ¶ 17). Sotolongo provides the following examples of actions constituting retaliation and a hostile work environment:

- Sotolongo was the only ALJ in the office who was excluded from multiple office parties (*id.* ¶¶ 20, 24);

- On March 18, 2018, a copy of Sotolongo's individual hard drive appeared on the shared network (*id.* ¶ 21);

- On April 20, 2018, Sotolongo was excluded from a meeting with her supervisors and all of the other ALJs at her office (*id.* ¶ 22);

- Whalen refuses to speak to Sotolongo and has "meddled in" her cases (*id.* ¶¶ 25-26);

- Sotolongo's supervisors "routinely" make unannounced visits to Sotolongo and make derisive or degrading comments to her (*id.* ¶ 28);

- On May 7, 2019, Whalen asked that Sotolongo not be allowed to record a training session, but did not make the same request of other ALJs (*id.* ¶ 29); and

- On September 10, 2019, Sotolongo received a "falsely negative evaluation," even though she had, prior to her allegations of discrimination, received "positive and glowing evaluations" (*id.* ¶ 28).

### B. Procedural History

Sotolongo filed her complaint on June 2, 2019, which she amended on October 21, 2019. (*See* Compl. (Dkt. 1); Am. Compl.) Now before the court is Defendants' motion to dismiss for failure to state a claim. (*See* Mot.; Defs.' Mem. in Supp. of Mot. ("Mem.") (Dkt. 20-8); Pl. Mem. in Opp. to Defs.' Mot. ("Opp.") (Dkt. 20-9); Defs.' Reply ("Reply") (Dkt. 20-10).) In the course of briefing the instant motion, Sotolongo withdrew her disparate treatment claim under Title VII. (*See* Opp. at 1 n.1.) Her Title VII retaliation and hostile work environment claims, as well as her claims under § 1983 and the New York State Constitution, remain.

## II. LEGAL STANDARD

The purpose of a motion to dismiss for failure to state a claim under Rule 12(b)(6) is to test the legal sufficiency of a complaint. *See Patane v. Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007). A complaint will survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* On a motion to dismiss under Rule 12(b)(6), the court must accept as true the factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *See Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir. 1999). In evaluating a motion to dismiss, a court may consider documents central to a plaintiff's claim, documents sufficiently referred to so as to be deemed "integral" to the complaint, and documents over which a court may take judicial notice. *See King v. City of New York*, No. 12-cv-2344 (NGG), 2014 WL 4954621, at *7-8 (E.D.N.Y. Sept. 30, 2014) (citing *Global Network Comms., Inc. v. City of New York*, 458 F.3d 150, 156 (2d Cir. 2006)).

## III. DISCUSSION

### A. Claim Preclusion

Defendants argue that this action is barred by claim preclusion in light of Sotolongo's decision to litigate the NYSDHR's no probable cause finding in the the New York State Supreme Court. (Mem. at 9.) Claim preclusion, or res judicata, is an affirmative defense based on the principle that "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Ostreicher v. Lincoln Nat'l Life Ins. Co.*, No. 17-cv-6904 (NGG), 2019 WL 7194478, at *4 (E.D.N.Y. Dec. 23, 2019). This court looks to New York law to determine the preclusive effect to afford a decision of a New York court. *See Giannone v. York Tape & Label, Inc.*, 548 F.3d 191, 192-93 (2d Cir. 2008) ("[W]hen determining the effect of a state court judgment, federal courts . . . are required to apply the preclusion law of the rendering state.").

Under New York law, claim preclusion bars a party from litigating "a claim where a judgment on the merits exists from a prior action between the same parties involving the same subject matter." *In re Hunter*, 794 N.Y.S.2d 286, 269 (2005). New York has adopted a "transactional approach" to claim preclusion, such that "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions are barred, even if based upon different theories or if seeking a different remedy." *Sosa v. J.P. Morgan Chase Bank*, 33 A.D.3d 609, 611 (2d Dep't 2006). Particularly relevant to the instant motion, appeals of NYSDHR decisions to the State Supreme Court are routinely found to have preclusive effect. *See, e.g. Aumporn Wongkiatkachorn v. Capital One Bank*, No. 09-cv-9553 (CM), 2010 WL 3958764, at *5 (S.D.N.Y. 2010) ("Plaintiff forfeited her right to relitigate her federal claim in this court by going to the State Supreme Court and obtaining judicial affirmance of the [NYS]DHR's decision."). Here, Sotolongo does not dispute that

5

the NYSDHR action resulted in a final judgment on the merits and that the parties are in privity. Sotolongo maintains, however, that claim preclusion does not bar this action because she has asserted new facts to support her retaliation and hostile work environment claims that could not have been asserted in the NYSDHR action. (Opp. at 2-3.)

Whether a "factual grouping constitutes a transaction or series of transactions depends on how the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Smith v. Russell Sage College*. 54 N.Y.2d 185, 192-93 (1981). The focus on "factual groupings" is designed to be "pragmatic." *Id.* at 192. As such, claim preclusion applies "[e]ven if there are variations in the facts alleged or different relief is sought, if the actions are grounded on the same gravamen of the wrong." *Yeiser v. GMAC Mortg. Corp.*, 535 F. Supp. 2d 413, 422 (S.D.N.Y. 2008); *see also Harris v. BNC Mortg., Inc.* 737 F. App'x 573, 575 (2d Cir. 2018) (summary order). This means that "mere[] additional instances of what was previously asserted" will not overcome a claim preclusion defense. *Gropper v. 200 Fifth Owner LLC*, 151 A.D.3d 635, 635-36 (1st Dep't 2017) (quoting *Waldman v. Vill. of Kiryas Joel*, 207 F.3d 105, 113 (2d Cir. 2000)).

Here, while not identical, the factual allegations in the NYSDHR action and those asserted in the instant case constitute the same "factual grouping" for the purposes of claim preclusion because they describe the same disparate treatment by the same supervisors during the same period of time. For example, Sotolongo alleges in her amended complaint that she was the only employee who was "excluded from the [office] holiday party" in December 2017, as well as from "an in-office birthday party" in May 2018. (Am. Compl. ¶¶ 20-24.) Similarly, in her NYSDHR complaint, she alleged that she was "excluded from an in-office

6

holiday party" in December 2015 for "speaking out against gender discrimination." (NYSDHR Verified Compl. (Dkt. 20-3) at ECF 10.) Sotolongo further alleges in her amended complaint that someone took a "mirror image . . . [of] her hard drive on the shared network," while the hard drives of her similarly situated colleagues "who had not complained about discrimination" did not have their hard drives copied. (Am. Compl. ¶ 21.) Likewise, in her NYSDHR complaint, she alleged that someone had attempted to access her Lexis account in September 2016. (NYSDHR Verified Compl. at ECF 14.) In addition, while she alleges in her amended complaint that she was continually ignored by her supervisors while being subject to their "derisive and degrading comments," (Am. Compl. ¶¶ 25-30), her NYSDHR complaint alleged that she was subject to the "loud silent treatment" by her supervisors, and that "humiliating" and "passive-aggressive" notes in the office were directed at her. (NYSDHR Verified Compl. at ECF 12-13.) Finally, her amended complaint alleges that she was not allowed to participate in crafting and submitting a new proposed DMV manual in May 2018, nor was she permitted to attend the DMV's annual training conference in May 2019. (Am. Compl. ¶¶ 23, 31.) Likewise, her NYSDHR complaint asserted that she was not allowed to record a March 2017 training session, and that she gradually received more assignments in her office's Queens location, thus "depriving" her of "access to her base and all the resources therein." (NYSDHR Verified Compl. at ECF 15-16.) Taken together, the new facts alleged in the amended complaint constitute "additional instances of what was previously asserted" in Sotologno's NYSDHR complaint and adjudicated to a final judgment. *Gropper,* 151 A.D.3d at 635-36. Therefore, because Sotolongo's claims share a "factual grouping" with her earlier complaint, Defendants have established each necessary prong of the claim preclusion defense, and Sotolongo's federal and state claims are precluded.

### B. Title VII—Retaliation and Hostile Work Environment

Even if Sotolongo's claims were not precluded, her federal claims would fail as a matter of law.[2]

#### 1. Retaliation

Sotolongo argues that the DMV unlawfully retaliated against her in violation of Title VII. Title VII makes it "an unlawful employment practice for an employer to discriminate against" one of its employees because the employee "has opposed any practice made an unlawful employment practice by this subchapter, or ... testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2300e-3(a). Title VII retaliation claims are "evaluated under the familiar *McDonnell Douglas* three-step burden-shifting analysis." *Jones v. Target Corp.*, 792 F. App'x 54, 55 (2d Cir. 2019) (summary order). To establish a prima facie case for retaliation under Title VII, "an employee must show (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Jute v. Hamilton Sundstrand Corp.*, 420 F.3d 166, 173 (2d Cir. 2005).

Sotolongo's claim fails because she has not established a causal connection between filing the complaint with the NYSDHR and the alleged material adverse employment actions she suffered.[3] "A causal connection in retaliation claims can be shown either[:]

---

[2] The court considers Sotolongo's Title VII claims together with her § 1983 claim because "the elements of one are generally the same as the elements of the other and the two must stand or fall together." *Feingold v. New York*, 366 F.3d 138, 159 (2d Cir. 2004).

[3] Because the court finds that Sotolongo has failed to adequately plead causation, it need not decide whether Sotolongo has properly plead material adverse employment actions.

8

(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky v. City of New York*, 921 F.3d 337, 353 (2d Cir. 2019).

Here, Sotolongo fails to allege that the filing of her complaint with the NYSDHR[4] was followed closely by discriminatory treatment. "Although the Second Circuit has not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, district courts in this Circuit have consistently held that the passage of two to three months between the protected activity and the adverse employment action does not allow for an inference of causation." *King v. Block Institute, Inc.*, No. 17-cv-7318 (NGG), 2020 WL 2523245, at *7 (E.D.N.Y. May 18, 2020). Here, Sotolongo filed her complaint with the NYSDHR in April 2017 but the amended complaint does not allege that any retaliatory conduct occurred until December 2017, a gap of eight months. (*See* Am. Compl. ¶¶ 16, 20.) That is too long of a time to establish causation indirectly. Furthermore, Sotolongo has neither alleged that fellow employees who engaged in similar protected activity were also treated unfairly nor does she allege facts supporting direct evidence of retaliatory animus on the part of Defendants. Accordingly, Sotolongo's allegations do not establish a prima facie case of retaliation under Title VII.

---

[4] Defendants are correct in noting that it was Sotolongo's filing of the NYSDHR complaint—and not the subsequent affirmance by the New York State Supreme Court—that constitutes protected activity and started the clock for the purposes of establishing the requisite causal connection. Indeed, Sotolongo's amended complaint says as much, enumerating a list of "actionable facts" that occurred "[s]ubsequent to filing [the NYSDHR] complaint." (Am. Compl. ¶ 17.)

2. Hostile Work Environment

Sotolongo likewise asserts a claim for hostile work environment under Title VII. "To state a hostile work environment claim, a plaintiff must plead facts tending to show that the complained of conduct: (1) is objectively severe or pervasive—that is, creates an environment that a reasonable person would find hostile or abusive; (2) creates an environment that the plaintiff subjectively perceives as hostile or abusive; and (3) creates such an environment because of the plaintiff's sex, or another protected characteristic." *Robinson v. Harvard Prot. Servs.*, 495 F. App'x 140, 141 (2d Cir. 2012) (summary order). In ascertaining whether a hostile environment claim is plausible, courts consider factors such as "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys.*, 510 U.S. 17, 23 (1993).

Here, Sotolongo fails to plausibly allege a hostile work environment. While her complaint asserts that she was excluded from meetings and parties, ignored by her coworkers, and given more onerous assignments, these claims are insufficient to establish such an environment. *See Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (holding that "negative statements, "harsh tones," being excluded from conversations and meetings, and increased workloads did not constitute hostile work environments). And, crucially, Sotolongo fails to allege that the treatment of which she complains was connected in any way to her protected status, which is fatal to her hostile work environment claim. *See Hui-Wen Chang v. N.Y.C. Dep't of Ed.*, 412 F. Supp. 3d 229, 248-49 (E.D.N.Y. 2019). Therefore, her hostile work environment claim also fails.

### C. Conclusion

For the reasons stated above, Defendants' (Dkt. 20) motion to dismiss is GRANTED.

SO ORDERED.

Dated: Brooklyn, New York
       July 22, 2020

                                                     /s/ Nicholas G. Garaufis
                                                     NICHOLAS G. GARAUFIS
                                                     United States District Judge